UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

SEAN FORESTER-HOARE,

    Plaintiff,

v.

SECURITY DIRECTOR KIND, CPT. CUSHING, CPT. SWIEKATOWSKI, DEPUTY WARDEN HAESE, WARDEN RADTKE, SGT. PAGEL, SGT. WASIELEWSKI, LT. KENT, LT. ROZMARYNOWSKI, LT. WICKMAN, LT. MEJIA, CPT. EISINGER, CPT. VAN LANEN, CPT. COLE, CPT. SCHULTZ, CPS PERTTU, CPS HOFFMAN, DAI ADMINISTRATOR HOVE, WARDEN COOPER, M. GREENWOOD, DOC SECRETARY CARR, ICE DEGROOT, ICE GRABOWSKI, ICE DAVIDSON, ICE HOMPE, ICE O'DONNELL, PAULA STEISEL, HANNAH UTER, DR. HAMILTON, DR. PYRENBERG, H. BERG, RN MATUSHAK, MS. VOGELS, MR. DORSEY, MS. WERTEL, MS. HEIL, ANGELA HANSEN, SANDRA DEYOUNG, M. SCHORNACK, J. KOEHLER, K. JOHNSON-DEBAUCHE, LT. MATUSHAK, WARDEN STEVENS, and CASSANDRA BAIER,

    Defendants.

Case No. 23-CV-537-JPS

**ORDER**

---

    Plaintiff Sean Forester-Hoare, an inmate confined at Green Bay Correctional Institution ("GBCI") filed a pro se complaint under 42 U.S.C. § 1983 alleging that his constitutional rights were violated. ECF No. 1.

Plaintiff has also filed several motions for a preliminary injunction. ECF Nos. 9, 11, 15. On June 28, 2023, the Court screened Plaintiff's complaint, found that it violated Federal Rule of Civil Procedure 8, and allowed him the opportunity to file an amended complaint. ECF No. 25. On July 7, 2023, Plaintiff filed a motion for reconsideration of the Court's order. ECF No. 26. On July 10, 2023, Plaintiff filed an amended complaint. ECF No. 27. The Order addresses Plaintiff's motion for reconsideration and motions for preliminary injunctive relief, as well as screens his amended complaint.

### 1. MOTION FOR RECONSIDERATION

The Court will deny Plaintiff's motion for reconsideration of its prior screening order. Because there has not yet been a final judgment in this case, Federal Rule of Civil Procedure ("Rule") 54(b) governs Plaintiff's motion for reconsideration. *See Bhatia v. Vaswani*, No. 18-CV-2387, 2020 WL 3578004, at *2 (N.D. Ill. July 1, 2020). Under Rule 54(b), "any order or other decision [ ] that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *see also Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987), opinion amended on denial of reh'g, 835 F.2d 710 (7th Cir. 1987) (affirming district court's denial of motion to reconsider under Rule 54(b)).

Revisions under Rule 54(b) are discouraged and should be reserved for circumstances in which the initial decision was "clearly erroneous and would work a manifest injustice." *See Ghashiyah v. Frank*, 2008 WL 680203, at *3 (E.D. Wis. Mar. 10, 2008) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988)) (internal quotation marks omitted). In

general, "litigants must fight an uphill battle in order to prevail on a motion for reconsideration." *Id.* (citation and internal quotation marks omitted). Motions to reconsider under Rule 54(b) "are judged by largely the same standards as motions to alter or amend a judgment under Rule 59(e)." *Id.* The Court may grant a Rule 59(e) motion to alter or amend the judgment if the movant presents newly discovered evidence that was not available at the time of trial, points to evidence in the record that clearly establishes a manifest error of law or fact, or if the Court previously misunderstood a party's arguments. *Miller v. Safeco Ins. Co. of Am.*, 683 F.3d 805, 813 (7th Cir. 2012). Rule 59(e) motions are "not appropriately used to advance arguments or theories that could and should have been made before the district court rendered a judgment, or to present evidence that was available earlier." *Id.* (citation and internal quotation marks omitted). A party moving for reconsideration bears a heavy burden and its motion must be supported by a showing of extraordinary circumstances. *Mahurkar v. C.R. Bard, Inc.*, 2003 WL 22844237, at *1 (N.D. Ill. Dec. 1, 2003) (citing *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996)).

Plaintiff's motion for relief from judgment or order does not meet the high burden necessary to succeed. Plaintiff states that he needed to submit a lengthy complaint because his case is complicated and all the information in the original complaint is necessary for the Court to understand the danger he faces. The Court disagrees with this assertion. Plaintiff has filed a shortened and amended complaint that, as the Court explains below, adequately describes his issues to proceed on certain claims. As such, the Court denies Plaintiff's motion for reconsideration and proceeds to screen the amended complaint.

## 2. SCREENING THE AMENDED COMPLAINT

### 2.1 Federal Screening Standard

Under the Prison Litigation Reform Act ("PLRA"), the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether a complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes pro se complaints

liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

### 2.2 Plaintiff's Allegations[1]

Plaintiff alleges that GBCI and the Department of Corrections ("DOC") is intentionally keeping him in proven life-threatening danger from hits of four different gangs to rape and kill him. ECF No. 27 at 3. Plaintiff also alleges that Defendants are using the restrictive housing unit ("RHU" or "the hole") to keep him in cruel conditions of confinement in feces-covered cells. *Id.* Plaintiff is denied all amenities and rights protected under equal protection laws, like phone calls, visits, television, canteen, contact with family, and legal resources, among other things. *Id.* Plaintiff alleges that all named staff have participated in these violations but especially Defendant Security Director Kind ("Kind") and Defendant Cpt. Cushing ("Cushing"). *Id.* Staff is intentionally failing to protect Plaintiff and are deliberately indifferent to Plaintiff's life, health, and safety. *Id.* Plaintiff maintains that he must be transferred to another prison to be safe. *Id.*

As background, Plaintiff provides that he had started the police academy when he was arrested. *Id.* Plaintiff maintains that he was wrongly arrested and is innocent. *Id.* Because of his status in the police academy, Plaintiff was assaulted many times in jail. *Id.* This is highly known by DOC, and it is in Plaintiff's P.R.C. classification status. *Id.* Due to this and Plaintiff's health needs, Plaintiff maintains that he can only be safely placed

---

[1] The Court notes that Plaintiff's handwriting is at times very difficult to read. The Court has used its best effort and judgment in reiterating Plaintiff's allegations.

at DCI or WSPF. *Id.* DOC is aware that Plaintiff has been assaulted dozens of times and stabbed three times as a result of this status. *Id.*

Plaintiff has proof that staff is acting intentionally to harm him. *Id.* On January 15, 2021, Plaintiff was sent to GBCI on an emergency P.C.R. health-needs transfer. *Id.* This was a security-transfer and Kind was directly called by the Security Director at WCI and told Plaintiff's needs. *Id.* Kind agreed to meet Plaintiff's needs and transferred him to GBCI. Plaintiff was told he would be placed in P.C. in a treatment center building. However, on the van ride to GBCI, Kind, Cushing, Defendant Deputy Warden Haese ("Haese"), and Warden Radtke ("Radtke") cancelled everything, and Plaintiff was given a conduct report ("CR") for not going to general population ("GP") where staff knew he would be killed. *Id.*

Since then, GBCI/DOC has conducted sixteen investigations that prove Plaintiff is in life-threatening danger. *Id.* at 5. Defendants have even caught other prisoners on camera who were promising to rape and kill Plaintiff. *Id.* Despite this, Defendants will still not transfer him or return him to P.C. DOC policy requires that once a danger is proven, staff has to protect an inmate. *Id.* ICE and PREA investigations have affirmed and ordered that Defendants do both, but they refuse to do so. *Id.*

Plaintiff alleges that Defendants' actions are done in retaliation for filing PREA complaints and lawsuits against other staff at WCI. *Id.* Cushing used to work at WCI and is friends with the staff that assaulted Plaintiff. Staff made it look like they fixed the situation by sending Plaintiff to GBCI, but Defendants Cushing, Swiekatowski, Kind, Haese, and Radtke intended to make sure Plaintiff's needs were not met and that he would be in danger or forced to take CR and stay in RHU. *Id.* Staff are intentionally encouraging inmates to assault Plaintiff. Cushing came to see Plaintiff and told him that

he and Kind took him off F.P.C. and would not put him back on, and that Plaintiff would die there; Cushing then laughed and left. Every time Cushing comes by, he does this and taunts Plaintiff. *Id.* The hearing officer, Defendants Cpt. Cole ("Cole") and Lt. Matushak ("Lt. Matushak") do the same as they deliver CRs for Plaintiff not going to GP. On February 9, 2021, Defendant Wickman said loudly that Plaintiff was a cop and no longer on P.C. even though there are hits on him. *Id.* at 6. The staff all say things like this loudly so that other inmates on the unit hear and get paid to assault and kill Plaintiff. *Id.* Staff's acts are intentional to place Plaintiff's life in danger.

In September 2021, Lt. Matushak and Defendant Lt. Rozmarynowski ("Rozmarynowski") started a new form of retaliation for Plaintiff not going to GP. *Id.* Every time Plaintiff refused GP, they found a new cell covered in feces with broken sinks and toilet and placed Plaintiff in those cells prior to cleaning them. *Id.* Plaintiff got so depressed that he hung himself. *Id.* When released from clinical observation, Plaintiff was put right back in the same cell. *Id.*

Affirmed reports and complaints came proving that Plaintiff's life was in danger, but Defendants Perttu, Cushing, Swiekatowski, Schultz, Kind, Haese, Radtke, and Stevens still refused to transfer Plaintiff. *Id.* An inmate complaint confirmed that he should be transferred, but Kind, HSM Utter, Baier, Radtke all refused to do it. *Id.* Disability Coordinator Brown told HSU and Kind to transfer him, but they refused. *Id.* at 7. Cpt. Cummings came to see Plaintiff and said HSU would return healthcare and Kind would transfer him, but neither did. *Id* DOC internal affairs called Plaintiff on September 20, 2021, and apologized; they filed a report and told Kind and Radtke to transfer him, but they again refused. *Id.*

RHU staff kept moving inmates by him that had assaulted or put hits on Plaintiff. *Id.* PREA Director Weber told Kind to transfer Plaintiff; Kind refused. *Id.* Cummings set up a transfer but she quit that week, and Perttu cancelled the transfer to intentionally keep Plaintiff in danger. *Id.* On September 30, 2022, Plaintiffs' inmate complaint was affirmed and told Kind and Radtke he was to be transferred and returned to PC; they refused again. *Id.* Kind has to sign off on all security decisions, so he is responsible for everything being done as well as other staff through Defendants Wickman, Cole, and Matushak finding him guilty of CRs for not going to GP. Cole referred Plaintiff for a transfer but Cushing, Swiekatowski, Kind, and Radtke told him to cancel it. *Id.* Plaintiff sent all Defendants a thirty-page packet of the reports and all defendants have the power to transfer Plaintiff, but they refused. *Id.* at 8. Swiekatowski was replaced by Defendant Schultz and Radtke was replaced by Stevens. *Id.* Plaintiff sent reviews of his situation to Perttu, PSU staff Defendants Hamilton and Pyrenberg, RN Matushak, Vogels, Dorsey, Wentel, Eisinger, Rozmarynowski, VanLanen, Hoffman, Cummings, Swiekatowksi, Schultz, Kind, Haese, Radtke, Stevens, Mejia, and Cushing who had a duty to transfer and return Plaintiff to PC. *Id.* On December 23, 2021, Defendants Heil, DeYoung, Dorsey, Pagel, Schornack, and Koehler held a hearing but refused to transfer Plaintiff. *Id.* On December 22, 2022, Defendant Johnson-Debauche held the hearing and again refused to transfer Plaintiff. *Id.*

Plaintiff sent it to Defendants DOC Administrators Hove, Cooper, and Greenwood and to DOC Secretary Carr. Plaintiff also sent it to ICE staff Defendants DeGroot, Grabowski, Steisel, Utter, Davidson, Hompe, and O'Donnell; these defendants failed to enforce the remedies affirmed in his inmate complaints. *Id.* On April 2, 2023, they contacted Kind, but Kind

again refused to transfer Plaintiff. *Id.* VanLanen stated that they are aware that Plaintiff can be sent to DCI but that they are not using that option. *Id.*

In addition to being forced into RHU, Plaintiff states that he faces two additional dangers as a result of Defendants' actions. *Id.* at 9. Plaintiff suffers from neuromuscular disorders, PTSD terrors, and Parkinson's Disease. Plaintiff's conditions are degenerative and get worse with age. Emotional trauma worsens Plaintiff's conditions and Defendants' actions have caused him additional pain and worse seizures. *Id.* Plaintiff is also in danger of suicide as a result of Defendants' actions. *Id.* Plaintiff fears for his life and Defendants have knowingly and intentionally kept Plaintiff in danger.

### 2.3 Analysis

First, Plaintiff may proceed on an Eighth Amendment deliberate indifference claim against Kind, Cushing, Swiekatowski, Haese, Radtke, Pagel, Wasielewski, Kent, Rozmarynowski, Wickman, Mejia, Eisinger, VanLanen, Cole, Schultz, Perttu, Hoffman, Hove, Cooper, Greenwood, Carr, Hamilton, Pyrenberg, Berg, Rn Matushak, Vogels, Dorsey, Wertel, Heil, Hansen, Deyoung, Schornack, Koehler, Johnson-Debauche, Lt. Matushak, Stevens, and Baier. The Eighth Amendment requires prison officials to take "reasonable measures to guarantee the safety of the inmates." *Balsewicz v. Pawlyk*, 963 F.3d 650, 654 (7th Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "This means that a constitutional violation inheres in a prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate." *Id.* (citing *Farmer*, 511 U.S. at 828). Deliberate indifference has an objective component and a subjective component. *Id.* To satisfy the objective component, the prisoner must have been exposed to a harm that was objectively serious. *Id.* (citing *Farmer*, 511

U.S. at 834). Under the subjective component, the prison official must have known of and disregarded an excessive risk to the inmate's health or safety. *Id.* (citing *Farmer*, 511 U.S. at 837–38). That is, the official must have been "aware of facts from which the inference could be draft that a substantial risk of serious harm exists," and he must have "draw[n] th[at] inference." *Id.* (quoting *Farmer*, 511 U.S. at 837). But liability does not attach if the prison official takes reasonable measures to abate the known risk. *Id.* (citing *Farmer,* 511 U.S. at 844).

At the early pleading stage, the Court finds that Plaintiff sufficiently alleges an Eighth Amendment deliberate indifference claim against these defendants based on the allegations that they knew of the serious risk of danger to Plaintiff's physical safety. Defendants placed Plaintiff in the unpalatable position of choosing between risking his life in general population and repeatedly receiving conduct reports for disobeying orders and being forced into the conditions restrictive housing. As such, Plaintiff may proceed on an Eighth Amendment deliberate indifference claim against these defendants based on their failure to protect Plaintiff from a known serious risk of danger. The Court notes that it is somewhat skeptical that this large number of defendants were personally involved in Plaintiff's deprivation; going forward Plaintiff must be able to specifically show how each defendant was personally involved. However, at the liberal pleading stage, the Court finds that Plaintiff has just passed the hurdle to proceed against this large group of defendants.

Second, the Court finds that Plaintiff may proceed on a First Amendment retaliation claim against Defendants Cushing, Swiekatowski, Kind, Haese, and Radtke. To prevail on a retaliation claim, Plaintiff must ultimately show that: "(1) he engaged in activity protected by the First

Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014).

Here, Plaintiff alleges that these defendants retaliated against him for filing a PREA grievance against guards at WCI. Cushing was friends with those guards and Plaintiff alleges that Defendants Cushing, Swiekatowski, Kind, Haese, and Radtke intended to make sure Plaintiff's needs were not met at GBCI as a result of the complaints. It is well established that a prisoner's ability to file complaints is protected by the First Amendment. *See Hughes v. Scott*, 816 F.3d 955, 956 (7th Cir. 2016). As for the second element, Plaintiff alleges suffering deprivations—being denied protective custody for the threats against his life and instead being forced to receive conduct reports and remain in restrictive housing—that, we can infer, would likely dissuade a person of ordinary firmness from exercising further First Amendment activity. *See Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (prison transfer likely to deter. At the pleadings stage, the Court therefore finds these allegations sufficient to state a First Amendment retaliation claim against Defendants Cushing, Swiekatowski, Kind, Haese, and Radtke.

Third, Plaintiff may proceed on an Eighth Amendment conditions of confinement claim against Lt. Matushak and Rozmarynowski for intentionally and repeatedly placing Plaintiff in feces-covered cells. A prisoner's claim of unconstitutional conditions of confinement is analyzed under the Eighth Amendment's cruel and unusual punishment clause. *See Farmer*, 511 U.S. at 834. A prisoner is entitled to live in conditions that do not amount to "punishment." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).

Page 11 of 18
Case 2:23-cv-00537-JPS    Filed 11/13/23    Page 11 of 18    Document 48

Detainees are entitled to be confined under humane conditions that provide for their "basic human needs." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones[.]" *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996).

To establish a constitutional violation with respect to an inmate's living conditions, he must be able to demonstrate both: (1) the conditions were objectively so adverse that they deprived him "of the minimal civilized measure of life's necessities," and (2) the defendants acted with deliberate indifference with respect to the conditions. *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (quoting *Farmer*, 511 U.S. at 834). "Life's necessities include shelter, heat, clothing, sanitation, and hygiene items." *Woods v. Schmeltz*, No. 14-CV-1336, 2014 WL 7005094, at *1 (C.D. Ill. Dec. 11, 2014) (citing *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006)); *see also Budd v. Motley*, 711 F.3d 840, 842–43 (7th Cir. 2013). Plaintiff alleges that he was repeatedly placed in feces-covered cells without running sinks or toilets as a form of punishment as opposed to any legitimate penological purpose. At the pleadings stage, the Court finds the allegations sufficient to proceed on an Eighth Amendment conditions of confinement claim against Lt. Matushak and Rozmarynowski.

Finally, the Court finds that Plaintiff may not proceed on any claims against Defendants DeGroot, Grabowski, Steisel, Utter, Davidson, Hompe, and O'Donnell. For a prison official to be personally liable, he or she must have participated in some way with the alleged constitutional violation. *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation.") (internal quotation marks

and citation omitted); *see also Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003). As to Defendants DeGroot, Grabowski, Steisel, Utter, Davidson, Hompe, and O'Donnell, Plaintiff fails to state a claim against them for their actions in relation to his inmate grievances. Generally, the denial of a grievance "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011); *see also George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). "If there is 'no personal involvement by the warden [in an inmate's medical care] outside the grievance process,' that is insufficient to state a claim against the warden." *Neely v. Randle*, No. 12 C 2231, 2013 WL 3321451, at *3 (N.D. Ill. June 13, 2013) (quoting *Gevas v. Mitchell,* 492 F. App'x 654, 660 (7th Cir. 2012)). As such, the Court will dismiss Defendants DeGroot, Grabowski, Steisel, Utter, Davidson, Hompe, and O'Donnell from this action for the failure to state a claim against them.

### 3. PRELIMINARY INJUNCTION

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). To obtain preliminary injunctive relief, whether through a TRO or preliminary injunction, the plaintiff must show that (1) his underlying case has some likelihood of success on the merits, (2) no adequate remedy at law exists, and (3) he will suffer irreparable harm without the injunction. *Wood v. Buss*, 496 F.3d 620, 622 (7th Cir. 2007). A preliminary injunction is not appropriate to guard against the "mere possibility of irreparable injury." *Orr v. Shicker*, 953 F.3d 490, 501 (7th Cir. 2020) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). If the plaintiff can establish those three factors, the court must balance the harm to each party and to the

public interest from granting or denying the injunction. *See Wood*, 496 F.3d at 622; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013); *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999).

In the context of prisoner litigation, the scope of a court's authority to issue an injunction (including a TRO) is circumscribed by the PLRA. *See Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012). Under the PLRA, preliminary injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. §3626(a)(2); *see also Westefer*, 682 F.3d at 683 (noting the PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: prisons officials have broad administrative and discretionary authority over the institutions they manage" (internal quotation marks and citation omitted)).

Based on the very limited information before the Court, it is unclear if Plaintiff can demonstrate a likelihood of success on a claim that he is not receiving adequate protection from other inmates in violation of the Eighth Amendment or that he will be irreparably injured if he is not granted immediately relief while this case is pending. Therefore, the Court will order a response from GBCI Warden Stevens before taking further action on the request for a preliminary injunction. The Court will deny Plaintiff's initial motions for injunctive relief, ECF Nos. 9, 11, and will order Defendant Stevens to respond to the most recent motion for a preliminary injunction, ECF No. 15, as soon as possible but no later than **December 4, 2023.**

4. **CONCLUSION**

Accordingly,

In light of the foregoing, the Court finds that Plaintiff may proceed on the following claims pursuant to 28 U.S.C. § 1915A(b):

**Claim One:** Eighth Amendment deliberate indifference claim against Kind, Cushing, Swiekatowski, Haese, Radtke, Pagel, Wasielewski, Kent, Rozmarynowski, Wickman, Mejia, Eisinger, VanLanen, Cole, Schultz, Perttu, Hoffman, Hove, Cooper, Greenwood, Carr, Hamilton, Pyrenberg, Berg, RN Matushak, Vogels, Dorsey, Wertel, Heil, Hansen, Deyoung, Schornack, Koehler, Johnson-Debauche, Lt. Matushak, Stevens, and Baier for their failure to protect Plaintiff from a known serious risk of danger.

**Claim Two:** First Amendment retaliation claim against Cushing, Swiekatowski, Kind, Haese, and Radtke.

**Claim Three:** Eighth Amendment conditions of confinement claim against Lt. Matushak and Rozmarynowski for intentionally and repeatedly placing Plaintiff in feces-covered cells.

Defendants should take note that, within forty-five (45) days of service of this Order, they are to file a summary judgment motion that raises all exhaustion-related challenges. The Court will issue a scheduling order at a later date that embodies other relevant deadlines.

Accordingly,

**IT IS ORDERED** that Defendants DeGroot, Grabowski, Steisel, Utter, Davidson, Hompe, and O'Donnell be and the same are hereby **DISMISSED** from this action;

**IT IS FURTHER ORDERED** that GBCI Warden Stevens file and serve a response to the most recent motion for a preliminary injunction, ECF No. 15, as soon as possible but no later than **December 4, 2023**, with

supporting documentation and declarations from staff as necessary, addressing whether Plaintiff is currently at risk of harm from other inmates, why he is in restrictive housing as opposed to protective custody, and what steps, if any, are being taken to protect him;

**IT IS FURTHER ORDERED** that Plaintiff's prior motions for preliminary relief, ECF Nos. 9, 11, be and the same are hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Plaintiff's motion for reconsideration, ECF No. 26, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion to expedite, ECF No. 40, be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that under an informal service agreement between the Wisconsin Department of Justice and this Court, a copy of the amended complaint and this Order have been electronically transmitted to the Wisconsin Department of Justice for service on Defendants **Kind, Cushing, Swiekatowski, Haese, Radtke, Pagel, Wasielewski, Kent, Rozmarynowski, Wickman, Mejia, Eisinger, VanLanen, Cole, Schultz, Perttu, Hoffman, Hove, Cooper, Greenwood, Carr, Hamilton, Pyrenberg, Berg, RN Matushak, Vogels, Dorsey, Wertel, Heil, Hansen, Deyoung, Schornack, Koehler, Johnson-Debauche, Lt. Matushak, Stevens, and Baier**;

**IT IS FURTHER ORDERED** that under the informal service agreement, those Defendants shall file a responsive pleading to the amended complaint within sixty (60) days;

**IT IS FURTHER ORDERED** that Defendants raise any exhaustion-related challenges by filing a motion for summary judgment within forty-five (45) days of service; and

**IT IS FURTHER ORDERED** if Defendants contemplate a motion to dismiss, the parties must meet and confer before the motion is filed. Defendants should take care to explain the reasons why they intend to move to dismiss the amended complaint, and Plaintiff should strongly consider filing a second amended complaint. The Court expects this exercise in efficiency will obviate the need to file most motions to dismiss. Indeed, when the Court grants a motion to dismiss, it typically grants leave to amend unless it is "certain from the face of the complaint that any amendment would be futile or otherwise unwarranted." *Harris v. Meisner*, No. 20-2650, 2021 WL 5563942, at *2 (7th Cir. Nov. 29, 2021) (quoting *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 524 (7th Cir. 2015)). Therefore, it is in both parties' interest to discuss the matter prior to motion submissions. Briefs in support of, or opposition to, motions to dismiss should cite no more than ten (10) cases per claim. No string citations will be accepted. If Defendants file a motion to dismiss, Plaintiff is hereby warned that he must file a response, in accordance with Civil Local Rule 7 (E.D. Wis.), or he may be deemed to have waived any argument against dismissal and face dismissal of this matter with prejudice.

Dated at Milwaukee, Wisconsin, this 13th day of November, 2023.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

Plaintiffs who are inmates at Prisoner E-Filing Program institutions shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. Prisoner E-Filing is mandatory for all inmates at Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility.

Plaintiffs who are inmates at all other prison facilities, or who have been released from custody, will be required to submit all correspondence and legal material to:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

**DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**. If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.

Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE**.