UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SEAN FORESTER-HOARE,

                Plaintiff,

v.

JOHN KIND, DANIEL CUSHING, WILLIAM SWIEKATOWSKI, MICHELLE HAESE, DYLON RADTKE, SCOTT PAGEL, MICHAEL WASIELEWSKI, JAMES KENT, TONIA ROZMARYNOSKI, ANDREW WICKMAN, ALEJANDRA MEJIA, JAMES ELSINGER, JAY VANLANEN, MICHAEL COLE, MICHAEL SCHULTZ, JODENE PERTTU, ROSS HOFFMAN, STEPHANIE HOVE, SARAH COOPER, MATTHEW GREENWOOD, KEVIN CARR, TODD HAMILTON, ALLEAH PYNENBERG, HILLARY BERG, RACHEL MATUSHAK, AMY VOGELS, KIM DORSEY, JAMIE WERTEL, CHRIS HEIL, ANGELA HANSEN, SANDRA DEYOUNG, MIRANDA SCHORNACK, JAMES KOEHLER, KORTNEY JOHNSON-DEBAUCHE, ANTHONY MATUSHAK, CHRISTOPHER STEVENS, and CASSANDRA BAIER,

                Defendants.

Case No. 23-CV-537-JPS

**ORDER**

Plaintiff Sean Forester-Hoare, an inmate confined at Green Bay Correctional Institution ("GBCI") filed a pro se complaint under 42 U.S.C. § 1983 alleging that his constitutional rights were violated. ECF No. 1. On November 13, 2023, the Court screened Plaintiff's amended complaint and

allowed Plaintiff to proceed on the following claims: (1) an Eighth Amendment deliberate indifference claim against all defendants for their deliberate indifference to protect Plaintiff from a known risk of serious danger; (2) A First Amendment retaliation claim against Defendants Cushing, Swiekatowski, Kind, Haese, and Radtke; and (3) an Eighth Amendment conditions of confinement claim against Defendants Lt. Matushak and Rozmarynowski for intentionally and repeatedly placing Plaintiff in feces-covered cells. ECF No. 48 at 15. The Court also ordered Defendant GBCI Warden Stevens to file a response to Plaintiff's most recent motion for a preliminary injunction, ECF No. 15, to address whether Plaintiff is currently at risk of harm from other inmates, why he is in restrictive housing as opposed to protective custody, and what steps, if any, are being taken to protect him. *Id.* at 15–16.

On January 11, 2024, the Court denied Plaintiff's motion for preliminary relief, without prejudice; however, the Court also identified issues with both parties' briefing and provided specific instructions for any renewed motions and response thereto. ECF No. 69. On April 1, 2024, Plaintiff filed a renewed motion for a preliminary injunction. ECF No. 74. On April 22, 2024, Plaintiff filed a motion for sanctions. ECF No. 76. On April 22, 2024, Defendants filed a motion to file a combined response to the motion for a preliminary injunction and motion for sanctions. ECF No. 78. On April 30, 2024, Plaintiff filed a reply to the motion to file a combined brief. ECF No. 79. On May 13, 2024, Defendants filed a response brief to the motion for a preliminary and motion for sanctions. ECF No. 81. On May 29, 2024, Plaintiff filed a combined reply brief. ECF No. 85.[1] The motion for a

---

[1]The Court notes that Plaintiff has also filed a second motion for sanctions, a motion to compel, motion to intervene, and a motion for leave to terminate, to

preliminary injunction and first motion for sanctions are now fully briefed and ready for disposition. As discussed below, the Court will deny Plaintiff's motions. Before addressing the merits of these motions, however, the Court will briefly address issues raised related to briefing and timeliness.

### 1. TIMING ISSUES AND BRIEFING

First, following the filing of Plaintiff's two motions, Defendants filed a motion to file a combined response, which effectively would allow them additional time to respond to the motion for a preliminary injunction. *See* ECF No. 78. Plaintiff takes issue with Defendants' request and argues that Defendants' responses were late because the Court had not yet ruled on Defendants' motion. *See* ECF Nos. 79, 85. The Court appreciates Defendants' efforts to consolidate the issues and provide succinct responses. As such, the Court will grant Defendants' motion to file a combined response and finds that Defendants' responses were therefore timely. In any event, as previously discussed in the prior preliminary injunction order, the issues at hand are important matters that necessitate input from both parties. While the Court certainly expects all parties to meet all deadlines in the case, litigation is not intended to be a 'gotcha' moment where one side wins all for a brief being filed a day or two late. *See Atkins v. Gilbert*, 52 F.4th 359, 361 (7th Cir. 2022) ("[W]e prefer to decide cases on the merits when we can."). Going forward, Plaintiff should focus his energy and briefing on the merits of the issues at hand as opposed to his 'gotcha' litigation strategy that will likely be unsuccessful in this Court and others.

---

deny, to limit depositions. ECF Nos. 86, 88, 90, 95. The Court will address these motions in a forthcoming order.

Second, Defendants also filed a motion to extend the discovery cut-off until August 9, 2024. ECF No. 94. While the Court acknowledges this motion is not yet fully briefed, the Court will grant Defendants' motion. Defendants indicate that additional time is needed in light of the pending motions and the complexity of the allegations spanning multiple years against multiple defendants. *Id.* For good cause shown, the Court will accordingly grant Defendants' motion for an extension of time.

2.  **PRELIMINARY INJUNCTION**

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). To obtain preliminary injunctive relief, whether through a TRO or preliminary injunction, the plaintiff must show that (1) his underlying case has some likelihood of success on the merits, (2) no adequate remedy at law exists, and (3) he will suffer irreparable harm without the injunction. *Wood v. Buss*, 496 F.3d 620, 622 (7th Cir. 2007). A preliminary injunction is not appropriate to guard against the "mere possibility of irreparable injury." *Orr v. Shicker*, 953 F.3d 490, 501 (7th Cir. 2020) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)).

Mere speculation will not be sufficient to support a preliminary injunction. *Baird v. Hodge*, 605 Fed. App'x. 568, 570 (7th Cir. 2015) (denying a former police officer's request for a preliminary injunction ordering protective custody or a prison transfer on the grounds that the Plaintiff had only shown one inmate who was a threat to him and that harm from any other inmate was speculative). If the plaintiff can establish those three factors, the court must balance the harm to each party and to the public interest from granting or denying the injunction. *See Wood*, 496 F.3d at 622;

*Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013); *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999). A preliminary injunction ordering the defendant to take an affirmative act rather than merely refrain from specific conduct is "cautiously viewed and sparingly issued." *Knox v. Shearing*, 637 F. App'x 226, 228 (7th Cir. 2016) (citations and quotations omitted).

In the context of prisoner litigation, the scope of a court's authority to issue an injunction (including a TRO) is circumscribed by the Prison Litigation Reform Act ("PLRA"). *See Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012). Under the PLRA, preliminary injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. §3626(a)(2); *see also Westefer*, 682 F.3d at 683 (noting the PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: prisons officials have broad administrative and discretionary authority over the institutions they manage" (internal quotation marks and citation omitted)).

Here, Plaintiff alleges that he faces-life threatening danger in restricted housing ("RH") at GBCI and that the only way to protect him is a transfer to another prison that can meet his security and health needs.[2] As such, he requests that the Court grant a preliminary injunction to transfer him to any other prison aside from GBCI, Waupun Correctional Institution ("WCI"), or Columbia Correctional Institution ("CCI") ECF No. 75 at 13.

To begin, the Court agrees with Defendants that Plaintiff did not follow the Court's specific instructions in its prior order regarding any

---

[2]The Court notes that Plaintiff's handwriting is at times extremely difficult to read. The Court has used its best efforts and judgment to reiterate his arguments.

future motion for a preliminary injunction. *See* ECF No. 69 at 6–7. Plaintiff's submission also fails to comply with the local rules; he has submitted a single-spaced sixty-seven paged brief in support of his motion along with 127 pages of exhibits. *See* Civ. L.R. 7(f) (principal memoranda must not exceed thirty pages); General L.R. 5(a)(5) (text of pleadings and other papers must generally be double-spaced). The Court could and, in many instances, would deny Plaintiff's motion on this basis alone. "Compliance with the rules is expected," General L.R. 1, and the Court recognizes that unnecessarily long briefing often wastes precious resources for all parties involved. However, given the subject-matter of Plaintiff's motion and his alleged life-threatening issues, the Court finds it preferrable to address the motion for preliminary relief on the merits as well.

The Court will deny Plaintiff's motion for a preliminary injunction because it finds that Plaintiff has not shown that he is likely to suffer irreparable harm without Court intervention. Plaintiff alleges that the threat to his safety "will always exist" because four different prison gangs have 'hits' on him to rape or kill him. ECF No. 75 at 11. Plaintiff says that moving any inmate who has threatened him in the past will not help because "like a hydra effect, everyone else in the gang and all inmates aware wish to get paid to assault [him]." *Id.* Plaintiff states that it is impossible to provide the Court with a concise list of the threats against him and who made them because he is "threatened literally everyday all day long by both staff and inmates" and "assaulted by staff at least once a month." *Id.* at 14. Plaintiff then lists a number of incidents that occurred at another prison in 2021 and 2023. *Id.* at 14–17. The Court does not elaborate on these instances as it does not find it useful to determine the present danger and irreparable harm if Plaintiff does not receive a transfer to

another prison. As to more current incidents, Plaintiff identifies three inmates that have repeatedly promised to kill him and collect the hits on him in 2024. *Id.* at 18.

Plaintiff addresses the current danger he believes he faces while housed in RH. ECF No. 75 at 29. To begin, Plaintiff questions why this is relevant since it is illegal to force Plaintiff to choose between RH and his safety. Plaintiff misunderstands the procedure posture of this case. The Court found in its screening order that Plaintiff's allegations *may* result in a finding that Defendants' actions are unconstitutional; there has been no final determination on the merits of Plaintiff's claims and further development of the record is needed before that can happen. Plaintiff got to tell his side of the story in his complaint and Defendants will have the opportunity at either summary judgment or trial to tell theirs. Instead, today, the current threat to Plaintiff's safety is a necessary component of the Court's analysis regarding the need for a preliminary relief; absent irreparable harm, preliminary relief would be inappropriate.

Plaintiff begins to describe his immediate danger by generally describing the conditions of RH and its punitive nature. *Id.* Plaintiff makes statements, without any support in the record, that "they get away with assaulting you, spitting in or putting toilet water or worse in your food, not feeding you, not giving you medication." Plaintiff further indicates that he has seen many inmates murdering staff and that is has been all over the news. These generalized allegations, especially without any support, do not show that Plaintiff himself faces immediate or irreparable harm in RH.

Plaintiff further provides that he is not safe in RH because the "plethora of affirmed ICE and PREA investigations, report in evidence prove [he is] not safe." *Id.* at 31. Plaintiff does not provide record citations

for this proof, however, and his attached exhibits span 127 pages. While the Court has generally reviewed Plaintiff's exhibits and attempted to locate support for his allegations, "judges and adverse parties need not try to fish a gold coin from a bucket of mud." *See U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003). Plaintiff maintains that the affirmed PREA Investigation #1006742 shows that an inmate almost stabbed him with a metal shank, ECF No. 75 at 31; however, Plaintiff's attachment regarding the incident contains no evidence to support the claim but for the fact that the complaint was affirmed. *See* ECF No. 75-1 at 1. Defendants provide further detail about this investigation and maintain that the PREA complaint was substantiated because it was an incident of sexual harassment, but the comments were not a verification of threats to Plaintiff's safety. ECF No. 81 at 10–11 (citing Kind Decl.). Plaintiff does not elaborate on any specific instances or investigations resulting from the threats against his life from specific inmates.

Plaintiff also maintains he is in grave danger in RH because staff regularly assault him. ECF No. 75 at 31. Plaintiff attaches several incident reports to prove the assaults are occurring. ECF No. 75-1 at 2–9. First, Plaintiff's own description of these incidents as staff assaulting him is far from certain. Although the reports indicate uses of force, this certainly does not automatically equate to an assault. Furthermore, this case does not involve a claim for excessive force against any defendant, nor does it involve a claim for inadequate medical treatment. Plaintiff also goes on at length in his brief about generally being denied medical treatment in GBCI and how only a transfer will provide adequate treatment. The Court will not, however, elaborate on this argument. This case and the present motion

cannot address every issue Plaintiff has experienced over the last several years.

Finally, Plaintiff provides detail why a transfer away from GBCI— but not to WCI or CCI—would prevent irreparable harm. Plaintiff maintains that these three prisons present particularly dangerous situations due to their architecture and general layout. Plaintiff argues that many areas in prisons this big have blind spots where guards do not watch, making it easy for inmates to wait and attack him unchecked or seen. ECF No. 75 at 52. Further, the types of dangerous inmates held in these maximum-security prisons add to his danger. *Id.* Prisoners with longer sentences have less to lose and may wish to make a name for themselves within their gang. The Court has no doubt that lower security prisons are generally safer for all inmates, and, indeed, presumes all inmates desire transfer to a lower-security prison; however, Plaintiff does not describe how his current situation specifically in RH makes him unsafe. Defendants counter Plaintiff's claims and provide evidence that RH is a tightly controlled environment and that inmates confined in RH typically have no unsupervised physical interactions with other inmates. ECF No. 81 at 8 (citing Kind Decl. ¶ 63). Defendants further provide that as a result of these controls, there is no opportunity for inmates to inflict serious physical harm on one another in RH. *Id.* (citing Kind Decl. ¶¶ 63–64.). In Security Director Kind's extensive correctional experience, there has never been an incident of inmate-on-inmate violence in RH that resulted in significant physical harm. *Id.* (citing Kind Decl. ¶ 64).

Given this background, the Court does not find that Plaintiff has met his burden to show that he is likely to suffer irreparable harm absent the injunction, and likens this case to the type of safety threat at issue in *Baird*.

Page 9 of 14
Case 2:23-cv-00537-JPS    Filed 07/12/24    Page 9 of 14    Document 98

The Seventh Circuit held in *Baird* that mere speculation is not enough to grant an injunction. There the inmate—a former police officer—dealt with the same kind of generalized reputation issues that Plaintiff complains of here. *See Baird*, 605 F. App'x at 568. The Seventh Circuit upheld the denial of a preliminary injunction and said it was not sufficient for the plaintiff to speculate that he was in danger because of his generalized reputation as a former police officer. *Id.* at 570. The Seventh Circuit concluded that the plaintiff did not deserve protective custody or a transfer, despite the fact that he had previously been punched, choked and hit with a plastic stool—conduct far more specific than what Plaintiff complains of here. *Id.* In this case, Plaintiff has done little more than speculate that his reputation from the police academy puts him in danger of serious harm. He mainly refers to incidents that occurred years ago at different prisons and provides little support that he threats to his life will always exist. The Court acknowledges that Plaintiff has generally referenced threats from certain inmates while housed in RH, however, given his lack of support for his allegations in the record, this is insufficient to form the basis of issuing a preliminary injunction.

The district judge in the *Baird* case found that "granting the motion 'would effectively make protective custody status for inmates known by anyone to be former police officers a constitutional norm.'" *Id.* at 570 (quoting *Baird v. Hodge*, No. 13-CV-0376-MJR-SCW, 2013 WL 6493694, at *5 (S.D. Ill. Dec. 10, 2013)). This Court finds the same to be true. The Court can certainly appreciate that Plaintiff may be at a higher risk of danger due to his status, and prison officials of course should take Plaintiff's status into account when determining housing and safety needs. However, on the record before it, the Court finds that Plaintiff has not shown any specific

threats to show that he currently faces imminent danger in RH, and that the generalized threats spanning years and different prisons are too speculative in nature to support a preliminary injunction.

In sum, the Court finds that Plaintiff has not shown he would suffer irreparable harm without preliminary relief. As such, the Court need not address the remaining factors for a preliminary injunction. *Id.* (citing *Kiel v. City of Kenosha*, 236 F.3d 814, 817 (7th Cir. 2000); *Thornton v. Barnes*, 890 F.2d 1380, 1390 (7th Cir. 1989)). The Court reiterates that it is Plaintiff's burden to show that he is entitled to the extraordinary remedy of a preliminary injunction. Prison officials have broad administrative and discretionary authority over the institutions they manage. S*ee Westefer*, 682 F.3d at 683. In this instance, Plaintiff has not met his high burden to show that the Court should interfere with the prison's expertise and authority to make the correct decision to keep Plaintiff safe. As such, the Court is obliged to deny Plaintiff's motion for a preliminary injunction.

### 3. MOTION FOR SANCTIONS

Plaintiff seeks sanctions against Defendants based upon Defendant Kind's alleged lies in a declaration and that defense counsel knowingly submitted the lies to the Court. ECF No. 77. Defendants argue that the Court should deny the motion for sanctions for two reasons: (1) that Plaintiff failed to comply with Federal Rule of Civil Procedure 11 ("Rule 11"); and (2) that Plaintiff has not shown that Kind lied. ECF No. 81 at 14.

In order for the Court to consider imposing sanctions under Rule 11, the moving party must comply with its procedural requirements. A party seeking to file a Rule 11 motion must serve it on the non-moving party at least twenty-one days prior to filing it with the court. *Matrix IV, Inc. v. Am. Nat'l Bank & Tr. Co. of Chi.*, 649 F.3d 539, 552 (7th Cir. 2011). "This practice

creates a safe harbor that allows a party to avoid sanctions by amending or retracting a challenged filing." *Olson v. Reynolds*, 484 F. App'x 61, 64 (7th Cir. 2012). Although a number of circuits require strict compliance with Rule 11's instruction, the Seventh Circuit permits service of a communication that warns of an impending motion for sanctions as a substitute for service of the motion itself. *N. Ill. Telecom, Inc. v. PNC Bank, N.A.*, 850 F.3d 880, 887 (7th Cir. 2017).

Here, Defendants argue that Plaintiff did not comply with Rule 11 because Plaintiff never conferred with them prior to filing his motion for sanctions. ECF No. 81 at 14. In direct contrast, Plaintiff maintains that he complied with Rule 11 by writing to counsel more than twenty-one days before his motion for sanctions. ECF No. 85 at 7. In support of his statement, Plaintiff provides a March 20, 2024 letter from defense counsel indicating that they were not prepared to discuss settlement at the time and that the Defendants would not withdraw Kind's declaration because they did not believe it to be untruthful. ECF No. 85-1 at 1. Defendants' letter contains no mention of sanctions. *Id.* Unfortunately, neither party provided Plaintiff's correspondence proceeding Defendants' letter to show whether Plaintiff had in fact alerted Defendants that he intended to file a motion for sanctions based on Kind's declaration. As such, nothing in the record shows that Plaintiff communicated a warning in writing of an impending motion for sanctions, and the Court therefore finds that Plaintiff failed to comply with Rule 11.

Even if, however, Plaintiff had complied with Rule 11, the Court does not find that Plaintiff has shown that Kind's declaration contains knowingly false statements. As discussed above, the parties clearly disagree whether Plaintiff faces threats to his safety in his current housing.

Page 12 of 14
Case 2:23-cv-00537-JPS    Filed 07/12/24    Page 12 of 14    Document 98

Disagreement over this issue does not necessarily mean that one person is lying, and the other is not. Kind could truthfully (but incorrectly) believe that no credible threat to Plaintiff's safety exists. Likewise, Plaintiff could truthfully (but incorrectly) believe that his life is in grave danger. Similarly, Plaintiff believes that Kind lied about his former involvement with the police academy; Plaintiff maintains that Kind knew he had been in the police academy and lied about it anyway. ECF No. 77 at 3. As far as the Court can tell, Kind has not stated that Plaintiff was never in the police academy. Instead, Kind's statement provides: "Based on multiple investigations concerning Mr. Forester-Hoare, there is no indication his safety is at risk because of gang activity, Mr. Forester-Hoare's claim he was training to become a police officer, or from Green Bay staff." ECF No. 63 ¶ 19. As such, the Court does not find Plaintiff has shown at this stage that Kind's declaration contains intentional lies. As such, the Court will deny Plaintiff's motion for sanctions.

Accordingly,

**IT IS ORDERED** that Defendants' motion to file a combined response, ECF No. 78, be and the same is hereby **GRANTED**; Defendants' responses were timely;

**IT IS FURTHER ORDERED** that Plaintiff's motion for preliminary injunction, ECF No. 74, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion for sanctions, ECF No. 76, be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that Defendants' motion to extend the discovery cut-off, ECF No. 94, be and the same is hereby **GRANTED**; Discovery must be completed on or before **August 9, 2024**.

Dated at Milwaukee, Wisconsin, this 12th day of July, 2024.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge