# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

SEAN FORESTER-HOARE,

Plaintiff,

v.

JOHN KIND, DANIEL CUSHING, WILLIAM SWIEKATOWSKI, MICHELLE HAESE, DYLON RADTKE, SCOTT PAGEL, MICHAEL WASIELEWSKI, JAMES KENT, TONIA ROZMARYNOSKI, ANDREW WICKMAN, ALEJANDRA MEJIA, JAMES ELSINGER, JAY VANLANEN, MICHAEL COLE, MICHAEL SCHULTZ, JODENE PERTTU, ROSS HOFMANN, STEPHANIE HOVE, SARAH COOPER, MATTHEW GREENWOOD, KEVIN CARR, TODD HAMILTON, ALLEAH PYNENBERG, HILLARY BERG, RACHEL MATUSHAK, AMY VOGELS, KIM DORSEY, JAMIE WERTEL, CHRIS HEIL, ANGELA HANSEN, SANDRA DEYOUNG, MIRANDA SCHORNACK, JAMES KOEHLER, KORTNEY JOHNSON-DEBAUCHE, ANTHONY MATUSHAK, CHRISTOPHER STEVENS, and CASSANDRA BAIER,

Defendants.

Case No. 23-CV-537-JPS

**ORDER**

Plaintiff Sean Forester-Hoare, an inmate confined at Green Bay Correctional Institution ("GBCI") filed a pro se complaint under 42 U.S.C. § 1983 alleging that his constitutional rights were violated. ECF No. 1. On November 13, 2023, the Court screened Plaintiff's amended complaint and

allowed Plaintiff to proceed on the following claims: (1) an Eighth Amendment deliberate indifference claim against all defendants for their deliberate indifference to protect Plaintiff from a known risk of serious danger; (2) a First Amendment retaliation claim against Defendants Cushing, Swiekatowski, Kind, Haese, and Radtke; and (3) an Eighth Amendment conditions of confinement claim against Defendants Lt. Matushak and Rozmarynowski for intentionally and repeatedly placing Plaintiff in feces-covered cells. ECF No. 48 at 15. On January 15, 2025, the Court severed the claims into three separate cases. ECF No. 133. The claim proceeding in this case is the Eighth Amendment deliberate indifference claim against all defendants for their deliberate indifference to protect Plaintiff from a known risk of serious danger. *Id.* On May 23, 2025, the Court denied Plaintiff's motion for reconsideration of the Court's decision to sever the cases. ECF No. 165.

Now pending before the Court are the parties' cross-motions for summary judgment. ECF Nos. 190, 193. The motions are now fully briefed and ready for disposition. ECF Nos. 191, 194, 197, 204, 207, 211. As described below, the Court will grant Defendants' motion for summary judgment, deny Plaintiff's motion for summary judgment, and dismiss this case with prejudice.

## 1. LEGAL STANDARD – SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56, the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The Court construes all facts and reasonable inferences in a light most favorable to the nonmovant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). In assessing the parties' proposed facts, the Court must not weigh the evidence or determine witness credibility; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010).

## 2. FACTUAL BACKGROUND

The Court relieved the parties from its normal summary judgment procedures due to shown difficulty creating a joint set of undisputed facts. ECF No. 189. Plaintiff submitted proposed findings of fact with his motion and Defendants submitted a response. ECF Nos. 192, 199. Defendants submitted proposed findings of fact with their motion and Plaintiff submitted a response. ECF Nos. 195, 202. However, none of Plaintiff's purported disputes are supported by specific references; instead, Plaintiff simply argues that Defendants did not submit admissible evidence to support their proposed findings of fact. *See* ECF No. 202. Plaintiff is mistaken because Defendants have supported their proposed facts with citations to Plaintiff's deposition and other allowable materials under Federal Rule of Civil Procedure 56. *See.* Fed. R. Civ. P. 56(c)(1)(a). Thus, the Court will treat any such facts as undisputed for the purposes of summary judgment. *See* Fed. R. Civ. P. 56(e)(2).

Plaintiff also submitted additional proposed facts, ECF No. 203, and Defendants filed a response to Plaintiff's additional facts, ECF No. 208. Many of Plaintiff's facts fail to direct the Court to evidentiary support in the record. Moreover, several of Plaintiff's proposed facts contradict his

deposition testimony in certain cases. *See* ECF No. 208 at 20. The Seventh Circuit's "sham-affidavit rule prohibits a party from submitting an affidavit that contradicts the party's prior deposition or other sworn testimony." *James v. Hale*, 959 F.3d 307, 316 (7th Cir. 2020). The purpose of the rule is to "'weed out unfounded claims, specious denials, and sham defenses.'" *Id.* (quoting *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 861 (7th Cir. 1985)). In accordance with the sham-affidavit rule, the Court will not treat Plaintiff's newly proposed facts as genuinely disputed for the purposes of summary judgment.

The following facts are drawn from the parties' proposed findings of fact unless otherwise noted, with all facts taken in the light most favorable to Plaintiff. The Court notes, however, that Plaintiff repeatedly refers to facts not relevant to the issues of this case. This case is not about retaliation or incidents that happened at other prisons years prior to the allegations in this case. This case is also not about whether Plaintiff is innocent or guilty of the underlying crimes for which he is currently incarcerated. Instead, this case is about Plaintiff's belief that he is not safe at GBCI and that prison staff were deliberately indifferent to his safety by failing to either place him in protective custody or transfer him to another institution. *See* ECF No. 48. The Court therefore focuses on the relevant material facts which address this question.

Plaintiff was transferred to GBCI in January 2021. The parties dispute the reason for Plaintiff's transfer; however, this is not a material dispute. Plaintiff purports that he was transferred on an emergency protective custody and health need; Defendants indicate that the transfer was instead based on Plaintiff's own poor behavior and institutional adjustment. *See* ECF No. 199 at 1. Plaintiff's supporting exhibit indicates

that he was indeed transferred for the reasons Defendants suggest. *See* ECF No. 191-1 at 7.

Plaintiff has continuously sought protective confinement at GBCI or alternatively for transfer to another institution. *See* ECF No. 48. Since his arrival, Plaintiff has been held in the restricted housing unit ("RHU") based on disciplinary infractions. Plaintiff fears general population because he believes he cannot be safe while housed there. Defendants provide that protective confinement is a non-punitive but very restrictive status. ECF No. 83 at 2. Inmates in protective confinement at GBCI are generally housed in the RHU with the permission of the warden. *Id.* Inmates in protective confinement are allowed privileges and property consistent with the privileges and property for the unit to which they are assigned, that is, the unit in which they resided prior to being placed in protective confinement. *Id.*

In contrast, inmates who are placed in RHU for disciplinary reasons may receive reduced privileges and/or property consistent with that discipline. Generally, inmates in RHU for disciplinary reasons receive less privileges and/or property than inmates from general population who are in protective custody. Inmates requesting protective confinement status must submit a completed DOC-1116 form to the Security Director, which is then reviewed to determine if safety concerns warranting protective confinement placement are present. In deciding whether safety concerns are present, Security Director Kind relies on DAI policies, the investigator's findings, and his own experience and knowledge. *Id.* Kind has worked for the DOC since 1990 and worked as the Security Director at GBCI since 2015. *Id.* at 3.

Plaintiff testified that he has been assaulted by other inmates at GBCI on a total of three occasions since 2021. On those occasions, three different inmates had spit or thrown bodily substances at him through the bars of their cells as he passed. Plaintiff testified that those three inmates do the same thing regularly to anybody passing. Plaintiff testified that he did not receive medical treatment following any of these incidents, and he has been "lucky enough" to have never been assaulted physically by another inmate at GBCI. Plaintiff testified that his injuries from the three incidents of spitting were "emotional," not physical. Plaintiff's proposed facts purport that he has been physically assaulted at GBCI on additional occasions. However, as discussed above, the Court does not consider these facts as genuinely disputed because they violate the sham-affidavit rule and contradict his prior deposition testimony.

Plaintiff testified that he had briefly participated in a law enforcement course at a community technical college in 2011. Plaintiff testified that he did not complete the law enforcement course but was expelled part way through. For the purposes of summary judgment, however, the Court considers Plaintiff's contention that other prisoners believed he had a law enforcement background and treated him negatively as a result. *See* ECF No. 199 at 3.

In June 2022, Plaintiff submitted an inmate complaint about several specific inmates making death threats against him. ECF No. 83 at 3. During the investigation, staff concluded that the complaint be affirmed since threats to Plaintiff were recorded. *Id.* at 5. Plaintiff was instructed that he could file a Special Placement Need ("SPN") request to have the incident investigated further. *Id.* at 5. On July 7, 2022, Plaintiff filed SPN concerns for inmates related to these threats. *Id.* In each instance, however, the threat

of the accusations could not be verified by the investigator, so prison staff found that the SPN's were not warranted. *Id.*

After this case had been filed, Plaintiff filed an additional inmate complaint in May 2023 complaining about another inmate threatening to anally rape Plaintiff until he bleeds. *Id.* at 6. Kind initially recommended that this complaint not be substantiated because Kind was unable to verify the physical threats Plaintiff complained about. *Id.* at 8. Instead, the investigation showed that the inmate made comments about Plaintiff's sexual orientation. *Id.* Kind found these threats were not verification of threats to Plaintiff's physical safety. *Id.* This complaint, however, was later substantiated as an incident of sexual harassment. *Id.* at 8. Kind indicated that this issue did not require further investigation because it was an incident of sexual harassment. *Id.* Following this incident, Plaintiff was moved to RHU cell 618 because it was more private and isolated and was closer to the RHU control center. *Id.* Prison staff made this decision so that Plaintiff was more removed from other inmates and so that RHU staff could more closely observe interactions between Plaintiff and other inmates. *Id.*

Plaintiff has filed approximately nineteen SPN concerns since he arrived at GBCI. *Id*. at 9. The institution has undertaken and documented at least twenty-three investigations into Plaintiff's assertions that he is in danger. Of these investigations, two were substantiated based on comments directed towards Plaintiff by other inmates. As identified above, the institution responded to substantiated findings of harassment by moving Plaintiff to a different cell where he was under closer staff observation. Defendants submitted evidence showing the various investigations completed regarding Plaintiff's safety concerns and their outcomes. ECF No. 83-9. Plaintiff vehemently disagrees with GBCI's

conclusions after conducting each investigation that protective custody or a transfer is not warranted. Plaintiff believed and continues to believe that he cannot be safe in general population at GBCI. ECF No. 203 at 3. Plaintiff's belief is based on gang members telling him that they would send word to GBCI to kill him upon transfer. *Id.*

**3. ANALYSIS**

Defendants brought a motion for summary judgment seeking dismissal of the Eighth Amendment claim against all defendants for their deliberate indifference to protect Plaintiff from a known risk of serious danger. ECF No. 193. Based on the Court's review of the parties' submissions, and for the reasons explained below, the Court will grant Defendants' motion for summary judgment and will dismiss this case.

To begin, the Court finds that Plaintiff has in no shape or form shown any facts demonstrating that the thirty-seven named defendants were deliberately indifferent to Plaintiff's safety. The Court noted in its screening order that it was skeptical that this large number of defendants were personally involved in Plaintiff's alleged deprivation. ECF No. 25 at 10. The Court indicated that going forward, Plaintiff must be able to specifically show how each defendant was personally involved. *Id.* None of Plaintiff's filings meet this requirement; no facts even attempt to explain how each defendant was involved. Prison officials cannot be held liable for failing to do something they had no authority to do. *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) ("Public officials do not have a free-floating obligation to put things to rights ... Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job."); *Mitchell v. Kallas*, 895 F.3d 492, 498–99 (7th Cir. 2018) (holding prison psychologist was not liable for delay in processing, and denial of, plaintiff's request for hormone-therapy

treatment, where there was "no evidence" the psychologist could have "sped up" the process or "influenced" the final decision). There is no evidence here that the myriad named defendants could have taken any additional action to change Plaintiff's security status. The Court will therefore instead focus on the actions of Security Director John Kind, who made the relevant security decisions regarding Plaintiff's security status. *See* ECF Nos. 63, 83; *see also Woods v. Gann*, No. 3:25CV426 DRL-SJF, 2026 WL 2167809, at *2 (N.D. Ind. July 27, 2026) (finding no deliberate indifference against officers who were directed by the Warden regarding the plaintiff's protective custody status).

The Court next considers whether the record before it establishes that Kind was deliberately indifferent to Plaintiff's safety.[1] The Eighth Amendment requires prison officials to take "reasonable measures to guarantee the safety of the inmates." *Balsewicz v. Pawlyk*, 963 F.3d 650, 654 (7th Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). "This

[1]The Court notes that Defendants make various arguments related to the types of damages allowed in this case based on Plaintiff's lack of physical injury. ECF No. 194 at 7. The Court finds that Plaintiff likely could have proceeded even without a showing of a physical injury. *See Wright v. Miller*, 561 F. App'x 551, 555-56 (7th Cir. 2014) ("Even without an actual injury, the mere probability of the harm to which Hennrich exposed Wright can be sufficient to create liability: The 'heightened risk of future injury' a prison official intentionally or with reckless indifference inflicts on an inmate 'is itself actionable.'") (quoting *Budd v. Motley*, 711 F.3d 840, 843 (7th Cir. 2013). Plaintiff would be limited to nominal and punitive damages in that instance. *Id.* (finding the plaintiff was limited to nominal and punitive damages because "a court may not award compensatory damages for nonphysical harm, such as fear of attack."). Additionally, "physical injury is not a prerequisite for injunctive relief." *Freeman v. Reichard*, No. 17-CV-0372-SMY, 2017 WL 2645648, at *4 (S.D. Ill. June 20, 2017) (citing *Merritte v. Kessel*, 561 Fed. App'x 546, 548 (7th Cir. 2014)). The Court, however, finds it prudent instead to focus on Defendants' argument on the merits because the record does not support a finding of deliberate indifference. *See* ECF No. 194 at 7–8.

means that a constitutional violation inheres in a prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate." *Id.* (citing *Farmer*, 511 U.S. at 828). Deliberate indifference has an objective component and a subjective component. *Id.* To satisfy the objective component, the prisoner must have been exposed to a harm that was objectively serious. *Id.* (citing *Farmer*, 511 U.S. at 834). Under the subjective component, the prison official must have known of and disregarded an excessive risk to the inmate's health or safety. *Id.* (citing *Farmer*, 511 U.S. at 837–38). That is, the official must have been "aware of facts from which the inference could be draft that a substantial risk of serious harm exists," and he must have "draw[n] th[at] inference." *Id.* (quoting *Farmer*, 511 U.S. at 837). But liability does not attach if the prison official takes reasonable measures to abate the known risk. *Id.* (citing *Farmer,* 511 U.S. at 844).

Not every threat or violent altercation between prisoners violates the Constitution. *See Hunter v. Mueske*, 73 F.4th 561, 565 (7th Cir. 2023). "[P]risons are dangerous places. Inmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). Therefore, a claim cannot be based "merely on knowledge of general risks of violence in a detention facility." *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005). In the context of failure to protect cases, the Seventh Circuit has equated "substantial risk" to "risks so great that they are almost certain to materialize if nothing is done." *See Brown,* 398 F.3d at 911 (internal quotations omitted); *see also Thomas v. Dart*, 39 F.4th 835, 843 (7th Cir. 2022) (quoting *Brown* and noting that a "bare 'increased risk' does not necessarily correlate to a 'substantial risk'"). "[A] prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety." *Pope v.*

*Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). Additionally, prison officials are not liable under the Eighth Amendment for merely exercising poor judgment. *Lewis v. Richards*, 107 F.3d 549, 554 (7th Cir. 1997) ("Exercising poor judgment, however, falls short of meeting the standard of consciously disregarding a known risk to [a prisoner's] safety."). "[P]roving deliberate indifference 'requires more than a showing of negligent or even grossly negligent behavior.... [T]he corrections officer must have acted with the equivalent of criminal recklessness.'" *Grieveson*, 538 F.3d at 775 (quoting *Borello v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006)).

Here, the Court does not find that the record supports a finding that Kind, or any other GBCI staff, acted with the equivalent of criminal recklessness to Plaintiff's safety. The parties dispute the objective question of whether Plaintiff was and is safe at GBCI. However, "courts afford prison administrators . . . great discretion in deciding where to place prisoners." *Miller v. McBride*, 64 F. App'x 558, 561 (7th Cir. 2003) (citing *King v. Fairman*, 997 F.2d 259, 262 (7th Cir. 1993)). "[T]he fact that an inmate sought and was denied protective custody is not dispositive of the fact that prison officials were therefore deliberately indifferent to his safety." *Lewis*, 107 F.3d at 553.

In *Boyce v. Moore*, 314 F.3d 884 (7th Cir. 2002), a lieutenant transferred Plaintiff to a different tier in the institution, rather than the protective custody status that the plaintiff had requested. *Id.* at 890. The court found it could not say that the lieutenant defendant's "decision evidence[d] the sort of deliberate indifference to trigger liability under the Eighth Amendment." The same can be said here where the undisputed facts show that GBCI has conducted over twenty-three investigations into Plaintiff's safety and his security concerns. The Court acknowledges that the record in this case does not contain detailed facts concerning the specifics of each and every internal

investigation GBCI conducted into Plaintiff's safety over the course of several years, or the specific reasons for denying him protective custody or a prison transfer in every instance. The record could certainly be more detailed.

However, at the same time, Plaintiff has not provided a scintilla of evidence to show that GBCI staff's actions in conducting these investigations rose to the level of criminal recklessness or even negligence. Plaintiff does not dispute the fact that GBCI officials conducted these investigations into whether or not protective custody or transfer to another institution was warranted. Plaintiff therefore does not contest that prison officials acted in response to each of his complaints.

Instead, Plaintiff disputes the conclusion that prison officials drew from those investigations. However, whether or not Plaintiff should be in protective custody or transferred to another institution is not the question before the Court today. "[T]he mere failure of the prison official to choose the best course of action does not amount to a constitutional violation." *Peate v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002). On the record before the Court, Kind's actions—even assuming for the sake of summary judgment that he made the wrong decisions and that Plaintiff should be in protective custody or transferred—would suggest poor judgment at most, and "[e]xercising poor judgment ... falls short of meeting the standard of consciously disregarding a known risk to [an inmate's] safety." *Lewis*, 107 F.3d at 554. Without more from Plaintiff, the Court cannot find that the evidence supports anything more than poor judgment or negligence. *See Downey v. Hyatte,* No. 3:21-CV-131-SJF, 2025 WL 901559, at *10 (N.D. Ind. Mar. 25, 2025) (finding no deliberate indifference where the prison warden took some action in response to the plaintiff's safety concern).

Plaintiff "points to no evidence suggesting that defendants acted recklessly." *See Murithi v. Gleckler*, 829 F. App'x 124, 127 (7th Cir. 2020). To the contrary, the record shows that GBCI staff regularly responded to and investigated Plaintiff's concerns regarding his safety. Plaintiff was housed in RHU and kept away from the inmates in general population during the time the investigations took place. Nothing in the record here supports a finding that Kind actually knew of a legitimate safety threat against Plaintiff and failed to take reasonable action. Although there is evidence that Kind became aware of alleged threats to Plaintiff's safety at GBCI, the record also shows that the information provided by Plaintiff could not be verified during the course of the various investigations. Plaintiff's unverifiable information made it less likely that prison staff knew of an ongoing or imminent threat to Plaintiff's safety. *See Downey v. Hyatte*, No. 3:21-CV-131-SJF, 2025 WL 901559, at *9 (N.D. Ind. Mar. 25, 2025) (finding that unverified information "lessen[ed] the plausibility of [the plaintiff's] claims of ongoing or imminent threats to his safety"). The Court therefore finds that no reasonable jury could find that Kind or any other defendant acted recklessly with regard to Plaintiff's safety.

The Court would be remiss, however, not to recognize the serious issues presented in its decision today. The Court does not take lightly the health and safety of incarcerated individuals, especially in cases such as this where a prisoner alleges his life is in imminent danger. However, the question before the Court is not whether GBCI conducted a perfect investigation or whether prison officials ultimately made the right decision. Instead, the question is whether a reasonable jury could find that Defendants acted with deliberate indifference to Plaintiff's safety. The record here does not support such a finding. The Court has no doubt that

making decisions regarding inmate housing and safety is more of an art than a science, with numerous factors needing to be considered on a rolling basis. The fact that a prison official disagreed with an inmate's desired security status in and of itself is not itself evidence of deliberate indifference. Indeed, the Court imagines that most prisoners would prefer to be housed in the institution of their choice for a variety of reasons, not limited to the fact that prisoners often seek institutions with a lower security rating. *See Dale v. Poston*, 548 F.3d 563, 570 (7th Cir. 2008) (acknowledging prison officials' reasons to hesitate when prisoner asked for specific transfer to a prison with a lower security rating).

"Courts must be sensitive to the State's interest in punishment, deterrence, and rehabilitation, as well as the need for deference to experienced and expert prison administrators faced with the difficult and dangerous task of housing large numbers of convicted criminals." *Brown v. Plata*, 563 U.S. 493, 511 (2011) (citing *Bell v. Wolfish*, 441 U.S. 520, 547–48 (1979)). Prison officials are "uniquely qualified to decide where a particular prisoner should be housed, how to manage the staffing at each institution, and how to preserve safety and security at the institution." *Shaw v. Rozmarynoski*, No. 24-CV-1029-BHL, 2025 WL 1869659, at *2 (E.D. Wis. June 4, 2025). The Court should not second-guess those decisions. *Id.* "The Court lacks the detailed knowledge and expertise to make such decisions and nearly always, except in the most extreme situations, must defer to prison officials' judgment." *Hill v. Crouther-Tole*, No. 24-CV-848-BHL, 2024 WL 428201, at *3 (E.D. Wis. Sept. 25, 2024). The Court therefore will not second guess the security decisions made in this case because Plaintiff has not shown any evidence showing that Defendants' actions rose to the level of deliberate indifference. The Court finds that no reasonable jury could find

that any defendants were deliberately indifferent to a known risk to Plaintiff's safety. The Court will accordingly grant summary judgment for all defendants.[2]

## 4. CONCLUSION

For the reasons explained above, the Court grants Defendants' motion for summary judgment in full and will accordingly dismiss this action with prejudice. The Court has carefully reviewed the record and finds that Defendants are entitled to judgment as a matter of law. The Court will accordingly deny Plaintiff's motion for summary judgment because he has not presented facts showing that Defendants acted with deliberate indifference as a matter of law. Finally, the Court will deny as moot Plaintiff's motions for court intervention, a transfer, and to stay the case that were filed after the motions for summary judgment.

Accordingly,

**IT IS ORDERED** that Plaintiff's amended motion for summary judgment, ECF No. 190, be and the same is hereby **DENIED**;

**IT IS ORDERED** that Defendants' motion for summary judgment, ECF No. 193, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion for intervention, motion for transfer, motion to stay, and second motion for intervention, ECF Nos. 212, 213, 214, 215, be and the same are hereby **DENIED as moot**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

---

[2]Defendants also moved for summary judgment based on qualified immunity. ECF No. 194 at 12. Because the Court grants summary judgment on the merits, the Court need not reach the question of qualified immunity.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 30th day of September, 2026.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge

This Order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **thirty (30)** days of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **twenty-eight (28)** days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline. *See id.* A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.